WILLIAM H. SACKETT *et al.*, Plaintiffs in Error, *v.* AUGUSTUS MANSFIELD *et al.*, Defendants in Error.

ERROR TO McHENRY.

A voluntary deed of assignment for the benefit of creditors, containing authority to the assignee, to sell and dispose of the property with all convenient diligence at public or private sale, as he may deem most beneficial to the interests of the creditors, and with all reasonable dispatch to collect the debts assigned, is not therefore fraudulent and void as to creditors.

A voluntary assignment is not vitiated because it delays creditors; it must appear to have been collusively designed to do so, and the intent is a question of fact. The good or bad faith of the transaction stamps its character.

Wherever the law will imply a discretion, a discretion may be given in the assignment.

THIS was a creditors' bill filed in the McHenry Circuit Court, alleging that in the year 1859, plaintiffs recovered judgment in the United States Circuit Court, for the Northern District of Illinois, against Augustus G. Mansfield, for $647.49 damages and costs, the issuance of writ of *fieri facias*, delivery to the marshal, and return of "no property;" that there is now due complainants the sum of $647.49, with interest from February 23, 1859; that Mansfield was in mercantile business in 1859; and that on or about the thirteenth day of February, Mansfield made an assignment to Anson Sperry for the benefit of creditors, with preferences, and which assignment is fraudulent and void as against creditors, because it contains the following provision: that the said Anson Sperry "shall take possession of the said property assigned, and shall, with all convenient diligence, sell and dispose of the same, at public or private sale, as he may deem most beneficial to the interests of the creditors, and shall with all reasonable dispatch collect, get in and recover the debts assigned," etc.

Bill asks that assignment may be declared fraudulent and void as to creditors.

The answer admits judgment, execution and return; admits making of assignment, annexes copy containing provisions stated in bill, denies fraud, and asks that answer be taken as demurrer.

Motion for decree on bill and answer denied, and exception taken.

The errors assigned are:

The assignment set out in answer is fraudulent and void on its face as against creditors.

The court had jurisdiction of the case.

The court, for the reasons above stated, erred in denying motion for decree.

The assignment complained of is as follows:

"This Indenture, made this thirteenth day of February, in the year of our Lord one thousand eight hundred and fifty-eight, between Augustus G. Mansfield, of the town of Marengo, county of McHenry, and State of Illinois, of the first part, and Anson Sperry of the same place, party of the second part. Whereas the said party of the first part is indebted to divers persons in divers sums of money, which by reason of difficulties and misfortunes he has become unable at present to pay, and is desirous of providing for the payment thereof by an assignment of his property and effects for that purpose, not exempt to him by the laws of the State of Illinois, Now this indenture witnesseth, that he the said party of the first part, in consideration of the premises, and of the sum of one dollar to him in hand paid by the said party of the second part, at or before the ensealing and delivery of these presents, the receipt whereof is hereby acknowledged, hath granted, bargained, sold, assigned, transferred and set over, and by these presents doth grant, bargain, sell, assign, transfer and set over unto the said party of the second part, his heirs, executors, administrators and assigns, all and singular the lands, tenements, hereditaments and appurtenances, goods, chattels, accounts, promissory notes, debts, choses in action, claims, demands, property and effects of every description belonging to the said party of the first part or in which he has any right or interest, now due or payable, or to become due or payable, to the party of the first part, except what are exempt to him by the law of the State of Illinois, the same being fully and particularly enumerated and described in a schedule thereof hereto annexed, marked 'Schedule A.' Also the books of account of the said party of the first part, and all papers, documents and vouchers relating to his business, dealings, property or affairs.

"To have and to hold the same and every part and parcel thereof unto the said party of the second part, his heirs, executors, administrators and assigns. In trust, nevertheless, and to and for the uses, interests and purposes following, that is to say:

"That the said party of the second part shall take possession of the said property hereby assigned or intended so to be, and shall with all convenient diligence sell and dispose of the same at public or private sale, as he may deem most beneficial to the interests of the creditors of the said party of the first part, and convert the same into money, and shall also with all reasonable diligence collect, get in and recover all and singular the said debts, dues, bills, bonds, notes, accounts and balances of account, judgments, securities, claims and demands, hereby assigned or intended so to be, and with and out of the proceeds of said

sales and collections that the said party of the second part shall first pay and disburse all the just and reasonable expenses, costs, charges and commissions attending the due execution of these presents and the carrying into effect the trusts hereby created, together with a reasonable compensation or commission for his own services, and shall also pay the taxes now due or to grow due from and upon the premises at present occupied by the said party of the first part, until the said property and effects hereby assigned shall be sold and disposed of, and with and out of the residue or net proceeds of such sales and collections, shall pay and discharge the debts due and owing by the said party of the first part in the order and manner following, that is to say:

"First, The said party of the second part shall pay all and singular the debts set forth and enumerated in a schedule of debts hereto annexed, marked ' Schedule B,' and designated in said schedule as class No. One, the same to be paid with lawful costs and interest, if the said proceeds shall be sufficient for that purpose, and if the same be not sufficient, then the said party of the second part shall apply the net proceeds to and in the payment of the said debts ratably and in proportion to their respective amounts thereof.

" Secondly, After the payment in full of all the debts designated in Schedule B as class number one, in manner above directed, the said party of the second part shall pay in full all and singular the debts enumerated and designated as class number two, and all other indebtedness due and owing by said party of the first part, to any person or persons whomsoever if there be sufficient of the said net proceeds remaining in his hands for that purpose, and if there be not sufficient, then the said party of the second part shall apply the same as far as they will go for that purpose, to and in the payment of the last mentioned debts, ratably and in proportion to the respective amounts thereof.

Lastly, After the payment of all the costs and charges and expenses attending the execution of the trust hereby created, and the payment and discharge in full of the lawful debts due and owing by the said party of the first part, of any and every kind and description, if any part or portion of the proceeds of said sales and collections shall remain in the hands or control of the said party of the second part, his executors, administrators and assigns, he or they shall return the same to the said party of the first part, his executors, administrators or assigns, and if after payment in full of all the said debts, there should remain in the hands or possession of the said party of the second part, his executors, administrators or assigns, any part or portion of the property and effects hereby assigned, which

shall not have been sold or collected or converted into money, he or they shall return, reassign and redeliver the same to the said party of the first part, his heirs, executors, administrators or assigns. And for the better and more effectual execution of these presents, and of the trusts hereby created and reposed, the said party of the first part doth hereby make, constitute and appoint the said party of the second part, his true and lawful attorney irrevocable, with full power and authority to do, transact, and perform all acts, deeds, matters and things which may be necessary in the premises, and to the full execution of the said trust, and for the purposes of said trust, to ask, demand, recover and receive of and from all and every person or persons all the property, debts and demands, belonging and owing to the said party of the first part, and to give acquittances and discharges for the same, and to sue, prosecute and defend for the same, and to execute, acknowledge and deliver all necessary deeds and instruments of conveyance, and also for the purposes aforesaid or any part thereof, to make, constitute and appoint one or more attorneys under him, and at his pleasure to revoke the same. Hereby ratifying and confirming whatever the said party of the second part, or his substitutes, shall lawfully do in the premises.

"In witness whereof, the said Augustus G. Mansfield, party of the first part, to these presents has hereto set his hand and seal the day and year first above written.

A. G. MANSFIELD. [seal.]"

E. S. Smith, and E. A. Storrs, for Plaintiffs in Error.

A. Sperry, for Defendants in Error.

Breese, J. The question presented on this record is, does the following provision in a deed of voluntary assignment by a debtor of his property, for the benefit of his creditors, render the deed fraudulent and void as to creditors: That the said assignee "shall take possession of the said property assigned, and shall, with all convenient diligence, sell and dispose of the same, at public or private sale, as he may deem most beneficial to the interests of the creditors, and shall with all reasonable dispatch collect, get in and recover the debts assigned," etc.

A very able and learned argument has been made to the court by the counsel for the appellants, who are creditors of the assignor, in which the whole doctrine of voluntary assignments from their inception, is most elaborately discussed, and references made to all the American authorities tending to elucidate it, and the conclusion is forcibly pressed upon this court, that

such a clause renders the assignment *ipso facto* fraudulent and void as to creditors. No argument or brief is submitted for the appellees, and we must decide the case without the aid we would have derived from the labor of their counsel, had it been directed to this question. We have examined all the authorities cited, and have had occasion heretofore to acknowledge their force in cases where they properly applied. We have always maintained the doctrine, that new and unusual clauses in such deeds of assignment cast suspicion on them, and to render them valid, they should contain an unconditional surrender and transfer of the property for the benefit of the creditors generally, with special preferences allowed.

This court has recognized the authority cited by appellant's counsel in two cases which have been before us. The first was the case of *McIntire* v. *Benson et al.*, 20 Ill. 500, in which we held that a clause in a deed of assignment, that the assignee should execute the trust faithfully according to the stipulations of the deed, being responsible only for his actual receipts and willful defaults, made the deed fraudulent and void.

The other case was that of *Bowen* v. *Parkhurst et al.*, 24 ib. 257, cited and commented on by the appellants, in which we held that a voluntary assignment of a debtor for the benefit of creditors, which authorized a sale of the property assigned, publicly or privately, on a credit, could not be sustained,—that it was fraudulent and void.

It is insisted that the provision in this deed is equivalent to a provision, that " the terms and conditions " on which the property shall be disposed of, shall be in the discretion of the assignee, and therefore he has, of necessity, the power to sell on a credit, for the terms on which personal property are usually sold, are, for cash or on credit. In support of this view many cases are cited from New York, and among them the case of *Schofeldt* v. *Abernathy*, 2 Duer, 533. The court in that case bases its decision on the case of *Nicholson* v. *Leavitt*, 2 Selden, 510, where it was held, that a clause authorizing a sale of the property upon a credit, rendered the deed fraudulent and void. This court has decided in the same way. The court in Duer say, " the words are not the same, but in the meaning there is not the slightest difference. ' Terms and conditions ' can only mean terms and conditions of payment, and unless in connection with the words that follow in the clause, they convey by a necessary implication, a discretionary power to sell upon credit."

But the provision in the deed in that case, was wholly unlike the one in this case, and that case is overruled by the decision of the Court of Appeals in the last resort, in the case of *Kellogg* v. *Slawson et al.*, 1 Kernan, 302, on which appellant's

3

counsel had commented freely. The chief justice of that court, with Justice Johnson, "who delivered an opinion to the same effect," and all the judges of the Supreme Court, concurred in the opinion pronounced by Justice Parker, and it has not been disturbed by any subsequent decision. Then, when "the terms and conditions" of sale are left in the discretion of the assignee, even in New York, whose courts are quite hostile to voluntary assignments, such a clause does not invalidate the deed. But contrast that provision with the one before us, and there will be found but a faint resemblance. The provision in that deed, authorized the assignees to sell and dispose of the property, "upon such terms and conditions, as in their judgment might appear best for the interest of the parties concerned, and convert the same into money," etc. In the deed before us, this is the provision: the said assignee "shall take possession of the said property assigned, and shall, with all convenient diligence, sell and dispose of the same, at public or private sale, as he may deem most beneficial to the interests of the creditors, and shall with all reasonable dispatch collect, get in and recover the debts assigned," etc.

Can human ingenuity torture the language of this assignment into an authority to sell on credit? Does the stipulation contain anything more, or confer greater or other authority, or a larger discretion than the law would imply without this language.? In every assignment, however free from special provisions it may be, a certain amount of discretion is necessarily granted to the assignee. He is authorized generally, to sell and dispose of the property, and convert the same into money; has he not necessarily, from the very nature of the trust conferred upon him, to judge for himself when he can best convert the property into money? The execution of all such trusts are under the control of a court of chancery, which will compel the assignee to use proper and reasonable diligence in converting the property into money. Some delay of creditors is a necessary consequence of all such assignments, but that alone does not vitiate them. The delay must be shown to be the intent and object of the assignment, not the necessary consequence of it. The object and intent being meritorious, to devote the property to the payment of creditors, the unavoidable delay in bringing the property to sale, has never been considered as bringing such assignments within the statute of Frauds and Perjuries. (Scates' Comp. 541, Sec. 2, chap. 44.) Malice, fraud, covin, collusion, or guile, are necessary elements to make up the intent or purpose to delay, hinder or defraud creditors, and they must be entertained by both parties to the deed. *Ewing* v. *Runkle*, 20 Ill. 448. It is a true principle, that a

party must be understood as having intended that which is the necessary consequence of his acts, but it by no means follows, that a general assignment of property, made expressly for the benefit of creditors, and with the avowed purpose of devoting the avails of it to them, was made with malice, fraud, covin, collusion or guile, with the intent or purpose to delay, hinder or defraud them. It is a question of fact, not a legal consequence, from the acts done. This view saves honest assignments, which have been upheld by all courts. The view taken by appellants would destroy all of them: not one could escape the general wreck, as all necessarily delay creditors. The real question in all such cases is, as to the *bona fides* of the transaction. As this court said in *McIntire* v. *Benson*, 20 Ill. 500, the great and indispensable requisite in all voluntary assignments by debtors, is *good faith;* the great and fatal objection, *fraud*, or the intent to defraud creditors, and we might have added, to delay or hinder them, prompted thereto by malice, covin, collusion or guile.

None of the cases cited by the counsel for the appellants are at all like this case. The stipulations in the deeds were very different. This deed made an exhibit in the cause, fulfills, in our judgment, all the requirements of a valid deed of assignment. It purports to be an assignment for the benefit of creditors with preferences, which are always allowed. It is for the benefit of the assignor's creditors, and in no sense or degree for the benefit of the assignor himself, except as to the surplus, if any, after paying all the debts. To effect this object, the property is unreservedly appropriated, without any contrivance to defeat its accomplishment. It is free from all provisions tending to delay, hinder, or defraud creditors in the collection of their debts, and although the effect may be to delay creditors, such is not its apparent object, nor is there any evidence that it was made with any such intent; and it appears on its face to be *bona fide*, with no unusual provisions in it, calculated to excite suspicion of its fairness.

The true test of the validity of such deeds is, that wherever the law would imply a discretion, such discretion may be given in the deed—where a discretion is given in the deed, which the law would not imply, the deed is fraudulent and void. We are well satisfied the law would give, by implication, all the discretion to the assignee, which is given by this deed; it is therefore neither fraudulent nor void. The judgment of the court below is affirmed.

*Judgment affirmed.*