## KANSAS CITY PACKING COMPANY

*v.*

## HOOVER.

### ASSIGNMENTS FOR THE BENEFIT OF CREDITORS ; CORPORATIONS ; PUBLIC POLICY.

1. Where the apparent effect of an assignment is to hinder or delay creditors, beyond the necessary delay incident to all valid assignments, it is void as against creditors, no matter what may have been the intent of the assignor.

2. An assignment, purporting to be made for the benefit of those creditors of the assignor, who might within 30 days accede to its provisions, but containing no provision for giving notice to creditors of its execution, provided, *inter alia,* that the surplus realized from the sale of the assigned property should, after satisfying the debts of the creditors, acceding to the terms of the assignment, be paid to the assignor ; that the assignee should have power to continue the business of the assignor, and to sell the property assigned upon credit ; and that the assignee should be exempt from liability for " the default or misdoings of any agent or employé, except the same shall arise through his own wilful default or neglect " : *Held,* That the effect of the assignment was to hinder and delay creditors, and it was void as against them.

3. An assignment for the benefit of creditors, executed in a foreign jurisdiction, will not be enforced here, when against the public policy of this jurisdiction.

4. Where a corporation, having its assets and a place of business in this District, executes, in a foreign jurisdiction, an assignment for the benefit of its creditors, its interpretation and operation will be governed by the laws of this District.

5. If a resident of this District goes into another jurisdiction expressly to make an assignment of property situated here, which assignment is valid there but invalid here, it will, in a proper case, be set aside upon the application of injured creditors, whether they are residents or non-residents.

No. 84.   Submitted October 6, 1893.—Decided November 6, 1893.

The appellee brought an action of assumpsit against the appellant in the Supreme Court of the District of Columbia, and at the same time sued out several writs of foreign attach-

ment against several persons as garnishees. The appellant moved to quash the writs, which motion was overruled, and judgments of condemnation were rendered against the credits in the hands of the garnishees. This was a hearing on an appeal by the defendant below from the order of the court overruling his motion to quash the writs, and from the judgments of condemnation. *Affirmed.*

The Court in its opinion stated the case as follows:

The appellee, Charles E. Hoover, who resides in the District of Columbia, brought suit in the Supreme Court of the District against the Kansas City Packing Co. to recover a debt of about $2,000 alleged to be due, and at the same time sued out writs of foreign attachment against several other persons, also residents of the District, as garnishees.

The garnishees answered, admitting certain indebtedness to the defendant, but alleged that before service of the writs they had received notice from George E. Parker, of Boston, Mass., that he held their notes under a deed of assignment for the benefit of certain creditors, executed and delivered to him by defendant in the State of Massachusetts. This instrument was made a part of the answers and shows that it had been duly recorded in the District.

Defendant moved to quash the several writs of attachment, because the answers thereto showed that the property sought to be attached belonged at the time to said Parker as assignee under the deed aforesaid. These motions were overruled, and judgments of condemnation were entered in the special term against the funds in the hands of the garnishees, from which defendant appealed to the General Term, whence the case has been regularly transferred to this court.

The deed of assignment, which was held void in the court below, recites that the assignor, "The Kansas City Packing Co., of Virginia, is a duly existing corporation, having an office and place of business in Washington, D. C.," and purports to have been made for the benefit of the parties of the third part, "who have executed, or shall hereafter accede to

these presents within thirty days from the date hereof, or within such further time, if any, as said party of the second part shall allow in and by a writing hereon signed." No provision is made for giving notice to creditors of the execution of the deed in any manner whatsoever.

The several provisions of this instrument, important to be considered in the determination of the question of its validity, are as follows:

1. After satisfying the debts of the creditors who shall sign the instrument, the assignee is required to pay the surplus, if any, to the assignor.

2. "And whereas, said property consists in part of goods and chattels and live stock ready to be sold, and for which orders are constantly being received, and of live stock ready to be slaughtered, and of machinery and tools used in such slaughter and manufacturing and liable to deteriorate in value; and whereas, the interruption of said business would lessen the value of all the property, and be injurious to the interests of the creditors, full power and authority are hereby given to said party of the second part, trustee hereunder, and to any successors, if they deem it expedient so to do, to carry on and continue said business, and to use therefor funds belonging to said trust, and to purchase live stock, goods and materials, and employ persons for carrying on said business."

3. "Said trustee may also sell all, or any part, of the said trust property upon credit, or for any reasonable security in his discretion."

4. "Provided, further, that no person shall be entitled to be admitted a creditor under these presents unless notice shall have been given by such creditor to said trustee that he has a debt against such party of the first part, and the amount and nature thereof, and that he accepts and accedes to these presents, before any dividend shall have been made and paid of said property under the trusts hereinbefore declared, nor shall any person be admitted as a creditor after the payment of any one or more dividends, except on the condition that there shall be no abatement or disturbance of

any dividend or dividends paid before the trustee had notice in writing as aforesaid, of the debt of such person."

5. The trustee " shall not be liable for any loss or damage which may happen thereto, nor for the default or misdoings of any agent or employé, except the same shall arise by or through his own wilful default or neglect."

In connection with this stipulation, it may be observed that, in addition to the power to carry on the business of the assignor, the instrument gives the trustee the fullest authority to settle, compromise and convert the claims due to it.

*Mr. E. A. Newman* and *Mr. Julius A. Maedel* for the appellant:

1. The assignment is valid in Mass., 5 Pick., 28; 137 Id., 285; 141 Id., 257, and is therefore valid here, for, in respect to such contracts, the *lex loci contractus* will prevail.    If the assignment be valid where executed as to personal property, it is valid everywhere.    *Houston* v. *Nowland,* 7 Gill & J., 480; *Livermore* v. *Jenckes,* 21 How., 126; Burrill on Assignments, Secs. 302 and 309.

2. An assignment for the benefit of such creditors as may accede to its provisions, is valid.    *Halsey* v. *Whitney,* 4 Mason, 231; *Gale* v. *Mensing,* 20 Mo., 461; *Shearer* v. *Loftin,* 26 Ala., 703; *Windham* v. *Patty,* 62 Tex., 490; *Brown* v. *McLean,* 5 Mackey, 559.

3. The provision in the assignment giving the assignee authority to continue the debtor's business, was a proper one. 20 L. J. C. P. (N. S.), 217; 5 Eng. L. & E., 431; *Nunn* v. *Wilsmore,* 8 Term R., 521-2; *Coate* v. *Williams,* 21 L. J. Exch. (N. S.), 176; S. C. 9 Eng. L. & Eq., 481; *DeForest* v. *Bacon,* 2 Conn., 633; *Kendall* v. *New England Carpet Co.,* 11 Conn., 383; *Foster* v. *Mfg. Co.,* 12 Pick., 454; *Bull* v. *Loveland,* 10 Id., 9; *Woodward* v. *Marshall,* 22 Id., 468; *Ravisies* v. *Alston,* 5 Ala., 297; *Mattison* v. *Judd,* 59 Mass., 99.

4. It is no objection to the assignment that it provides that the assignee shall not be " accountable for any loss or damage which may happen in and about the management or

disposition of the trust estate, unless the same shall be occasioned by their wilful neglect or default." *Farquharson* v. *Eichelberger*, 15 Md., 63 ; *Maenel* v. *Murdock*, 13 Md., 164.

Mr. *A. A. Birney* and Mr. *T. W. Birney* for the appellee :

1. The assignment is invalid in that it provides for but one class of creditors, namely, those who accede to its terms, and reserves the surplus, after paying this class, to the assignor. Unless all the creditors are provided for, any reservation is fatal to the assignment. *Sangster* v. *Gaither*, 3 Md., 40; *Bogert* v. *Caldwell*, 16 N. Y., 484 ; *McFerran* v. *Davis*, 70 Ga. 661 ; *Barney* v. *Griffin*, 2 N. Y., 365; 1 Am. & Eng. Ency. of Law, p. 863 and cases cited ; *Chafee* v. *Blatchford*, 6 Mackey, 459 ; *Green* v. *Tramwell*, S. P. 3 Md., 39 ; *Strong* v. *Skinner*, 4 Barbour, 546 ; *Pierson* v. *Manning*, 2 Mich., 445 ; *Means* v. *Dowd*, 128 U. S., 273.

2. The assignment is also invalid because it provides for an indefinite continuance of the business of the assignor. *Chafee* v. *Blatchford, supra ; Hayes* v. *Johnson*, 6 D. C., 174 ; *Brainerd* v. *Dunning*, 10 N. Y., 211 ; *Barnard* v. *Hempstead*, 7 Paige, 568 ; *Neuffer* v. *Pardue*, 3 Sneed (Tenn.), 191.

Mr. Justice SHEPARD delivered the opinion of the Court :

1. The statutes of Elizabeth for the prevention of fraudulent conveyances, are in full force in the District of Columbia, and have stood without a single amendment (until the act of Congress of February 24, 1893, regulating assignments for the benefit of creditors, Supp. R. S., Vol. 2, p. 90, which has no bearing on the present case), and its courts, so far as we can ascertain, have always given them application in the spirit of Lord Mansfield, who said of them:

" They cannot receive too liberal a construction, or be too much extended in the suppression of fraud." *Cadogan* v. *Kennett*, 4 Cowp., 432. Under these statutes, it has generally been held that a failing debtor may make an assignment of his property, in whole or in part, for the benefit of a part only of his creditors, notwithstanding the necessary effect

thereof is, to a certain extent, to hinder and delay other creditors in the collection of their debts; provided always that the sole purpose of the conveyance appears to be the discharge of honest debts, without any special intent whatever to hinder, delay or defraud creditors, and without any reservation, or attempted reservation, in the interest of the assignor.

Special provisions liable to give a benefit to the assignor, or to produce unnecessary or unreasonable delay, or to subject the property to probable waste, have generally been held to create an indisputable presumption of fraudulent intent, though some highly respectable courts have treated many such provisions as badges of fraud only, which require satisfactory explanation through extrinsic evidence.

We think the sounder doctrine is asserted by those cases which hold that the instrument must speak for itself, and that where the apparent effect of its provisions is to hinder or delay creditors, beyond that necessary delay incident to all valid assignments, it should be construed to be void against all such creditors, without stopping to inquire into what may, notwithstanding, have been the actual intention of the grantor.

Tested by this rule, we are of the opinion that the assignment under which it is claimed the property of defendant passed to George E. Parker, as trustee, is void as to the creditor plaintiff, and was properly so declared in the court below.

The provisions of the instrument relied upon, as showing forth the unlawful intention of the assignor, will be briefly considered in the order in which they have been recited in the preliminary statement.

Reservations of the surplus, in the interest of the assignor, have quite generally been held sufficient to avoid the assignment. *Chafee* v. *Blatchford*, 6 Mackey, 459; *Pierson* v. *Manning*, 2 Mich., 445; *Dana* v. *Lull*, 17 Vt., 390; *Truitt* v. *Caldwell*, 3 Minn., 257; *Green* v. *Trieber*, 3 Md., 11. And this, too, no matter if it may be clearly shown there would be none. *Barney* v. *Griffin*, 2 N. Y., 365. See, also, Wait on Fraudulent Conveyances, Sec. 327.

The proposition, however, that the mere reservation of the surplus for the benefit of the assignor or grantor, will vitiate the instrument under all circumstances, is rather too broad for our acceptance, for this is the condition that in equity attaches to all conveyances of this kind, and where the instrument is apparently in the nature of a mortgage to secure certain debts, or such an assignment as provides for the payment of all indebtedness, without restriction, before the reservation can become operative, and there are no other objectionable features, we do not see how it can reasonably be held void.  2 Bigelow on Fraud, 276 *et seq*.  But we think that the rule should apply with full force to an instrument like the one under consideration, when the reservation clause is taken in connection with its general tenor.  In this assignment no creditors are named.  The time for consent, so as to participate in the distribution, is limited to thirty days.  No provision whatever is made for giving notice to creditors so that this option may be availed of.  The instrument conveys all of the assets of the assignor.  Under its terms, a few creditors may, by accident or favor, learn of the assignment in time to avail themselves of it, and the trustee might convert the estate into money, pay off these few, and turn over the surplus before some of the creditors might even learn that such an instrument had been made.  It is this opportunity for the perpetration of fraud, which may or may not have been actually intended, that, in our opinion, makes the reservation clause of this particular instrument illegal.

The provision which permits the trustee, at his discretion, to carry on the business of the assignor is particularly objectionable.  We do not see how it can be well regarded as anything but a special contrivance through which creditors may be hindered, delayed and defrauded.  Grant that, in particular cases, such a power, if honestly and efficiently exercised, might enure to the advantage of creditors and benefit all interests, still its general effect can hardly be other than vicious, as furnishing a ready means, not only for advancing the interests of the assignor, but also for defrauding the

creditors and forcing them to accept conditions that may be imposed by the debtor, acting in concert with a pliant trustee of his own creation. Where it is to the interest of creditors that a business should be carried on for a time, they may be safely and wisely left to the exercise of their own discretion in the matter through general agreement; or the power of a court of equity may be relied upon when applied to for relief in the proper manner.

In some States, including Massachusetts, where this instrument was made, provisions similar to this one have been upheld; but the weight of authority, as well as reason, is decidedly against them. *Chafee* v. *Blatchford*, 6 Mackey, 459; *DeWolf* v. *Sprague Mfg. Co.*, 49 Conn., 282; *Jones* v. *Syer*, 52 Md., 211; *Dunham* v. *Waterman*, 17 N. Y., 1; *Gardner* v. *Com. Nat. Bank*, 95 Ill., 298; *Peters* v. *Light*, 76 Pa. St., 289; *Means* v. *Dowd*, 128 U. S., 273; 2 Bigelow on Fraud, 308; Wait on Fraudulent Conveyances, Secs. 330, 331.

The clause empowering the trustee to sell the assigned estate on credit, has also received the condemnation of many of the courts of the States, as well as of the then appellate court of this jurisdiction. *Hayes* v. *Johnson*, 6 D. C., 174; *Nicholson* v. *Leavitt*, 6 N. Y., 510; *Bowen* v. *Parkhurst*, 24 Ill., 258; *Barney* v. *Griffin*, 2 N. Y., 365; *Sutton* v. *Hanford*, 11 Mich., 513; *Gardner* v. *Com. Nat. Bank*, 95 Ill., 298; *Hutchinson* v. *Lord*, 1 Wis., 249; *Keep* v. *Sanderson*, 2 Wis., 31; *Whipple* v. *Pope*, 33 Ill., 334; 2 Bigelow on Fraud, 306-7. And it seems also to have met the approval of the Supreme Court. *Means* v. *Dowd*, 128 U. S., 282.

The stipulation relieving the trustee from all responsibility for " the default or misdoings of any agent or employé, except the same shall arise by or through his own wilful default or neglect," is highly objectionable in that it changes, to the disadvantage of the beneficiaries, the measure of diligence which the policy of the law requires of all trustees. A provision substantially like this has been held by the General Term of the Supreme Court of the District sufficient of itself to avoid an assignment for the benefit of creditors. *Hayes*

v. *Johnson*, 6 D. C., 174. And this conclusion has the support of quite a number of well considered cases. *Hutchinson* v. *Lord*, 1 Wis., 249; *Litchfield* v. *White*, 7 N. Y., 438; *McIntire* v. *Benson*, 20 Ill., 500; *True* v. *Congdon*, 44 N. H., 48; *Olmstead* v. *Herrick*, 1 E. D. Smith, 310; 2 Bigelow on Fraud, 323.

When we consider this exemption from liability in connection with the stipulation which limits the benefits of the trusts to creditors who in writing " accept and accede to these presents," and also with that which permits the trustee to continue the business of the assignor, it is hard to escape the conclusion that it was specially devised and inserted in the instrument as part of a scheme to hinder, delay, and defraud creditors.

2. It is contended, however, on behalf of appellant, with much earnestness, that this assignment, notwithstanding our opinion of it, must be given effect because it is a contract for the conveyance of personal property made in Massachusetts, and valid under the law of that Commonwealth. We have been cited to no statute, and it is not clear to us, by any means, that this assignment would be sustained in the courts of Massachusetts, as regards all of its provisions. It seems, also, that it might be held inoperative there, on the technical ground that it does not appear to have been actually signed by the proposed beneficiaries, or any of them, as contemplated by its terms. *May* v. *Wannemacher*, 111 Mass., 202; *Faulkner* v. *Hyman*, 142 Mass., 53; *Hewlett* v. *Cutler*, 137 Mass., 285.

Let it be granted, however, that this is a perfectly valid instrument under the law of Massachusetts, and would be given full force and operation there, still it does not follow that we must necessarily enforce it here, against a resident of this District, attempting to subject property therein situated, to his just debt, when its provisions are unmistakably against the public policy of this jurisdiction.

We have less hesitation in refusing to give effect to such an instrument made in Massachusetts, because no court in

the Union has been more zealous or constant than the Supreme Judicial Court of that Commonwealth in maintaining the doctrine that, " comity does not require that an assignment for the benefit of creditors should be executed, when it would be against the public policy of the State where the remedy is sought, or would be injurious to the best interests of its citizens." *Faulkner* v. *Hyman*, 142 Mass., 53 ; *May* v. *Wannemacher*, 111 Mass., 202 ; *Ingraham* v. *Geyer*, 13 Mass., 146 ; *Frank* v. *Bobbitt*, 155 Mass., 112.

But we do not find that this is a Massachusetts contract, in the sense that it must be considered as intended to be governed by her laws. The mere fact that it was drawn and executed in that State is not sufficient. There is nothing on the face of the instrument, or in the answers of the garnishees, which lead to the conclusion that it was intended to have any operation in Massachusetts at all. It is not made to appear that the assignor had its domicile, or a place of business even, or any property whatever, in that State.

On the other hand, the presumption would seem to lie, that it was actually intended for operation in the District of Columbia, chiefly if not exclusively, in so far as the administration of the trust is concerned, for the recital is that the assigning corporation has " an office and place of business in Washington, D. C.," and the only property of which the record shows the existence is also situated therein.

In the light of these facts, it may properly be held that it was the intention of all parties that the interpretation and operation of the assignment should be governed by the laws of the District of Columbia. *Fowler* v. *Eq. Trust Co.*, 141 U. S., 384 ; *Hall* v. *Cordell*, 142 U. S., 116 ; *Coghlan* v. *S. C. R. R. Co.*, 142 U. S., 101.

Moreover, if a resident of this District—as this assignor apparently was—should go into another jurisdiction expressly to make an assignment of his property situated here, which would be valid there but invalid here, by reason of its being opposed to public policy as it is declared by the courts of the District, that fact alone would be sufficient warrant for

us to set it aside, on the application of injured creditors, no matter where they might reside, in a proper case.

It follows from what has been said that the several judgments of condemnation, appealed from must be in all things affirmed, with costs to the appellee.

*Affirmed.*