### In re JOHN L. NELSON & BRO. CO.

#### (District Court, S. D. New York. January 9, 1907.)

1. BANKRUPTCY—PROCEEDINGS—PROPERTY—JURISDICTION.

 Where a bankruptcy petition was filed against a corporation, the court in which the petition was filed had sole jurisdiction to decide whether the corporation was or was not subject to the operations of the bankrupt law, and, pending such determination, any other federal District Court was authorized to take charge of the alleged bankrupt's property within its own territorial jurisdiction and to appoint an ancillary receiver therefor.

 [Ed. Note.—For cases in point, see Cent. Dig. vol. 6, Bankruptcy, §§ 22, 165.]

2. ATTACHMENT—PROPERTY IN CUSTODIA LEGIS—RECEIVERS.

 Where an ancillary receiver was properly appointed in bankruptcy proceedings, property in his hands as such receiver was in custodia legis, and was not subject to attachment.

 [Ed. Note.—For cases in point, see Cent. Dig. vol. 5, Attachment, § 181; vol. 42, Receivers, § 359.]

3. ASSIGNMENTS FOR BENEFIT OF CREDITORS—FOREIGN ASSETS—WHAT LAW GOVERNS.

 Where a foreign assignee for the benefit of creditors demands the surrender of property located in New York belonging to his assignor. the assignee's rights as against New York creditors are governed by the law of New York, and depend on principles of comity as between the state of New York and the state of the assignee.

 [Ed. Note.—For cases in point, see Cent. Dig. vol. 4, Assignments for Benefit of Creditors, §§ 642–657.]

4. SAME.

 An Illinois assignee for the benefit of creditors is not entitled to withdraw funds belonging to the assignor located in New York before payment of the assignor's attaching New York creditors.

 [Ed. Note.—For cases in point, see Cent. Dig. vol. 4, Assignments for Benefit of Creditors, §§ 642–657.]

5. SAME—WAGES—PREFERRED PAYMENT.

 Where, after bankruptcy proceedings against an Illinois corporation were set aside, an assignee for the benefit of creditors, appointed in that state, sought to obtain assets belonging to the corporation in New York, which were held by an ancillary receiver appointed in bankruptcy proceedings, the court sitting in New York had no power to give New York creditors, who had claims against the corporation for wages, a preference of payment out of the New York assets as against attaching New York creditors, though such wage earners would be preferred both under the bankrupt act and under the insolvency statute of Illinois.

 [Ed. Note.—For cases in point, see Cent. Dig. vol. 4, Assignments for Benefit of Creditors, §§ 642–657.]

6. RECEIVERS—APPOINTMENT—EFFECT.

 The effect of the appointment of a receiver is not to oust any person of his right to the possession of the property, but merely to retain it for the benefit of the party who may ultimately appear to be entitled thereto.

 [Ed. Note.—For cases in point, see Cent. Dig. vol. 42, Receivers, § 127.]

**7. ATTACHMENT—PRIORITY OF CLAIMS.**

A bankruptcy petition was filed against a corporation in Illinois, and an ancillary receiver appointed, who took charge of the property of the corporation in New York. R., a New York creditor, having advanced information of the approaching termination of the bankruptcy proceedings, because the corporation was not engaged in a business which subjected it to the bankrupt law, instituted a suit in New York, aided by an attachment served by delivering a copy warrant to the ancillary receiver, after which other attachments were levied, some after an order had been passed terminating the bankruptcy proceedings. *Held* that, since none of the attachments which were served while the property was in the possession of the ancillary receiver were effective except as a notice of claim addressed to the court through its receiver, regardless of whether they were served before or after the dismissal of the bankruptcy proceedings, the senior attachment was entitled to priority, there being no infirmity therein except the date of its issue.

On Application of Ancillary Receiver for Instructions.

Williams, Folsom & Strouse, for ancillary receiver.

Joseph W. Keller and Mr. Shaffner, for assignee under Illinois statute.

Henry S. Dottenheim, for senior attaching creditor.

Nathan Bardach, for junior attaching creditors.

Michael J. Joyce, for employés of alleged bankrupt.

HOUGH, District Judge. In August, 1906, a petition in bankruptcy was filed against the corporation above named (hereinafter called the "Nelson Company"), in the District Court for the Northern District of Illinois. The alleged bankrupt was an Illinois corporation, and had its principal place of business in Chicago. Shortly thereafter, upon due application, an ancillary receiver was appointed in this court, who took charge of the New York office and local business of the Nelson Company, and reduced the assets thereof to cash, of which he now has in his possession upwards of $5,000. Not long after the filing of the original petition in bankruptcy, some parties in interest, doubting whether the alleged bankrupt was such a corporation as came within the purview of the bankruptcy law, advised the Nelson Company to execute on September 17, 1906, a deed of assignment for the benefit of creditors, pursuant to the statutes of Illinois, which deed was, on October 3, 1906, duly filed in the proper office in Chicago. On October 5th the assignee under the Illinois assignment appeared in the bankruptcy court sitting in Chicago, and set forth by petition the nature of the business of the Nelson Company, prayed that the assets in the hands of the bankruptcy receiver be turned over to him, and represented that the court itself was without jurisdiction to adjudge the Nelson Company a bankrupt, or to administer or hold its estate. Upon this petition of the assignee such proceedings were had that on November 21, 1906, an order was entered declaring that "all of the material allegations" in the petition "are true," settling the account of the receiver in bankruptcy, and directing that the balance in hand be paid over by said receiver to the petitioning assignee.

From the exemplification of the bankruptcy proceedings submitted to me, it does not appear that there has ever been a technical dismissal

of the petition in bankruptcy against the Nelson Company, but I find that the proceedings of the bankruptcy court in Chicago amount to a declaration, duly contained in the order of November 21st, that the Nelson Company was not subject to the operation of the bankrupt law owing to the nature of its business, and that, therefore, said District Court declined to proceed further with the matter. Evidently, some New York creditors of the Nelson Company had early information of the approaching termination of the bankruptcy proceedings in Chicago, and on November 5, 1906, one Ruthenburg began an action in the Supreme Court of New York against the Nelson Company, wherein he procured a warrant of attachment, and on the same date caused the sheriff of New York county to serve a copy warrant upon the ancillary receiver in bankruptcy appointed by this court. On November 22, 1906, divers other New York creditors took the same course. On November 28, 1906, the Illinois assignee served his petition in this court, demanding that the funds in the hands of the receiver of this court be turned over to him. When such receiver took possession of the local business of the Nelson Company, he found certain workmen's wages due and unpaid. These workmen would be entitled to preferential payment, either under the bankruptcy law or under the assignment statute of Illinois. The rights of these several claimants, to the fund are now presented for consideration, after argument noticed for hearing under the receiver's petition for instructions.

It is the duty of this court to distribute the fund in question pursuant to general principles of law, which duty is cast upon it by Gumbel v. Pitkin, 124 U. S. 131, 8 Sup. Ct. 379, 31 L. Ed. 374. The attachments were apparently sued out under the impression that the bankruptcy proceedings in Illinois were void, wherefore the appointment of an ancillary receiver was also void, and the moneys in the possession of that receiver but so much of the assets of the Nelson Company found in the hands of a private person. This view is erroneous. The District Court for the Northern District of Illinois was jurisdictionally empowered, and solely empowered, to decide whether the Nelson Company was or was not subject to the operations of the bankruptcy law; and, pending decision on that point, it had full power to take charge of the property of the alleged bankrupt, from which right flowed the power of appointing an ancillary receiver. The moneys now in the hands of that receiver have therefore always been in custodia legis, far more obviously so than in Gumbel v. Pitkin, supra.

Just as an execution cannot be enforced against property in the hands of a receiver (Wiswall v. Sampson, 14 How. 64, 14 L. Ed. 322), so an attachment will not lie against moneys in the hands of a receiver (Adams v. Haskell, 6 Cal. 113, 65 Am. Dec. 491). The reason is the same, because an enforcement of the levy either of the attachment or the execution would constitute a contempt of court. But the court of original jurisdiction on questions affecting bankruptcy having now decided that no trustee can ever become entitled to the fund in question, and the Illinois assignee having claimed and

obtained the Illinois fund from the bankruptcy court in that state, the same assignee must now claim the New York find, not against the ancillary receiver, who offers no opposition at all, but against the rights of the New York attaching creditors. This court is bound to consider and respect the rights of such creditors growing out of the situs of the property in question within the state of New York, as well as its custody by this court. Gumbel v. Pitkin, supra. Such rights are governed by the law of New York, and depend upon principles of comity as between New York and Illinois. If the Illinois statute of assignments be regarded as an insolvent law, it is clear that a claimant thereunder cannot prevail against the subsequent attaching creditor. Security Trust Co. v. Dodd, 173 U. S. 624, 19 Sup. Ct. 545, 43 L. Ed. 835; Barth v. Backus, 140 N. Y. 230, 35 N. E. 425, 23 L. R. A. 47, 37 Am. St. Rep. 545.

I do not find it necessary to enter upon this question, and, arguendo, considering the transfer in Illinois as voluntary and lawful by the laws of that state, it must be regarded as lawful in New York unless opposed to the policy of that state. Ockerman v. Cross, 54 N. Y. 29, as cited in Warner v. Jaffray, 96 N. Y. 258, 48 Am. Rep. 616. It appears to be firmly established in Illinois that, even in the case of a voluntary foreign assignment, it is contrary to the policy of Illinois law "to allow the property or funds of a nonresident debtor to be withdrawn from this state before his creditors residing here have been paid, and thus compel them to seek redress in a foreign jurisdiction." Woodward v. Brooks, 128 Ill. 227, 20 N. E. 685, 3 L. R. A. 702, 15 Am. St. Rep. 104. See, also, Heyer v. Alexander, 108 Ill. 385; Smith v. Lamsen, 184 Ill. 71, 56 N. E. 387. And these decisions have been recognized by the federal courts sitting in Illinois. Sheldon v. Wheeler (C. C.) 32 Fed. 773. It thus appears that, were the situations reversed, a New York assignee would not be permitted to recover funds of his assignor situated in Illinois as against attaching creditors in that state. The rule of granting to assignments for the benefit of creditors extraterritorial vitality rests upon principles of comity. Faulkner v. Hyman, 142 Mass. 54, 6 N. E. 846. It involves reciprocity, and it appears to me to be clearly against the policy of any state to grant to the citizens of another jurisdiction a privilege from which its own citizens are debarred by the repeated decisions of the highest court of said jurisdiction. I am therefore of opinion that, upon principles of public policy, the claims of the attaching creditors are to be preferred to that of the assignor.

The claims of the wage earners of the Nelson Company would be preferred under the bankruptcy statute and also under the statute of Illinois, but there is no power in the court to apply either statute. These men are in the same position that they would have been in had no petition in bankruptcy been filed, and the attachments had nevertheless issued. Under existing circumstances, I know of no provision at all which entitles them to a preference.

On behalf of the junior attaching creditors, it is urged that, when the senior attachment was issued, there had been no decision by the bankruptcy court in Illinois adjudging that the Nelson Company was

149 F.—38

not subject to bankruptcy proceedings, and that therefore a distinction should be drawn between their attachments which were issued after the entry of the order of November 21, 1906, and that of Ruthenburg, which was taken out earlier. This distinction is not substantial. The moneys in the hands of the ancillary receiver are just as much in custodia legis now as they ever were. The receiver is not only now, but was at all times, merely a custodian of funds, the title to which was in the Nelson Company, so far as the bankruptcy law is concerned, for that company was never adjudged a bankrupt, and title, therefore, remained in it. The effect of the appointment of a receiver "is not to oust any party of his right to the possession of the property, but merely to retain it for the benefit of the party who may ultimately appear to be entitled to it; and when the party entitled to the estate has been ascertained, the receiver will be considered his receiver." Wiswall v. Sampson, 14 How. 64, 14 L. Ed. 322. Thus the service in attachment of the copy warrant is to be regarded as a notice of claim addressed to this court through its receiver; and when, as here, followed by appearance and demand herein, it is obviously unjust that the court, whose power rendered the levy ineffective, should use that power to insure the delivery of what would otherwise have been actually seized, to an assignee who would never have gotten it, nor had an opportunity of asserting his right thereto, but for the mistake of certain creditors in instituting bankruptcy proceedings.

As no infirmity in the senior attachment has been pointed out except the date of its issue, the fund is awarded to Ruthenburg; but if the juniors in attachment desire to move to set aside Ruthenburg's claim upon grounds other than the one above considered, I will hear argument upon due notice.

Let the ancillary receiver file his account in this court, and give notice to all attorneys who have appeared herein. · Exceptions to the account may be filed within five days after the service of such notice, and within that time, also, the junior attaching creditors must move if they are so advised. If no exceptions are filed and no motion made upon new grounds to set aside Ruthenburg's attachment, an order will be signed directing the receiver to pay over to Ruthenburg the net fund, upon receiving from him a satisfaction of his judgment pro tanto. In the order allowances will be fixed for the receiver and his attorneys. If exceptions are filed, let the matter be brought to my attention, and I will either hear the exceptions or refer the account.